Filed 4/26/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| VALERIE SERPA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CALIFORNIA SURETY<br>INVESTIGATIONS, INC., et al.,<br><br>    Defendants and Appellants. | B237363<br><br>(Los Angeles County<br>Super. Ct. No. BC464218)<br><br>    ORDER MODIFYING OPINION<br>(NO CHANGE IN JUDGMENT) |


THE COURT:

IT IS ORDERED that the citation to *Baltazar v. Forever 21, Inc.* (2012) 212 Cal.App.4th 221, 234 in the second full paragraph on page 9 of the opinion be deleted and replaced with *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 486.)

There is no change in the judgment.


_____
    PERLUSS, P. J.             WOODS, J.             JACKSON, J.

Filed 3/21/13; pub. order & mod. 4/19/13 (see end of opn.) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| VALERIE SERPA, | B237363 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC464218) |
| CALIFORNIA SURETY INVESTIGATIONS, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Reversed and remanded with directions.

Paul, Plevin, Sullivan & Connaughton, Fred M. Plevin, Jeffrey P. Ames and Matthew R. Jedreski for Defendants and Appellants, California Surety Investigations, Inc., Two Jinn, Inc., Aladdin Bail Bonds and Peter Holdsworth.

Stevens, Carlberg & McMillan and Daniel P. Stevens for Plaintiff and Respondent Valerie Serpa.

_____

California Surety Investigations (CSI), its employee Peter Holdsworth and CSI's parent company, Two Jinn, Inc., doing business as Aladdin Bail Bonds (collectively CSI parties), appeal from the order denying their motion to compel arbitration of claims brought against each of them by Valerie Serpa for sexual harassment, employment discrimination, wrongful termination in violation of public policy and related causes of action. The CSI parties contend the trial court erred in concluding the arbitration agreement Serpa signed was unconscionable and, therefore, unenforceable. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Serpa's Complaint*

On June 24, 2011 Serpa filed a complaint in Los Angeles County Superior Court alleging claims against the CSI parties under the Fair Employment and Housing Act (FEHA) for sexual harassment, gender discrimination, retaliation and failure to prevent harassment and discrimination (Gov. Code, § 12940, subds. (a), (h), (j), (i), & (k)). Serpa's complaint also included claims for violation of the Family Rights Act (Gov. Code, § 12945.2) and wrongful termination in violation of public policy.

### 2. *The CSI Parties' Motion To Compel Arbitration*

On August 9, 2011 the CSI parties moved to compel arbitration contending Serpa had agreed at the inception of her employment as a bail bonds investigator with CSI to arbitrate all claims arising out of her employment. The motion was based on three documents that were attached as exhibits: (1) "Acknowledgment of Receipt of Arbitration and Agreement to Arbitrate" (the arbitration agreement); (2) "Acknowledgment of Receipt of Employee Handbook"; and (3) a copy of CSI's employee handbook.

#### a. *The arbitration agreement*

The arbitration agreement that Serpa signed provided, "I understand and agree that if my employment is terminated or my employment status is otherwise changed or if any other dispute arises concerning my employment and The Company and I cannot resolve such dispute through informal internal efforts, I will submit any such dispute (including,

2

but not limited to wage and hour claims, claims of unlawful discrimination based on race, sex, age, national origin, disability or any other basis prohibited by law, but excluding claims which are required by law to be resolved solely by a public agency, such as claims relating to workers' compensation or unemployment insurance) exclusively to binding arbitration before a retired judge. I further agree to abide by the procedures in The Company's Arbitration Policy. I have received a copy of the Arbitration Policy that is located in the employee handbook."

b. *The employee handbook arbitration policy*

Page three of the employee handbook, under the bold-face-type heading "Arbitration Agreement," contains the company's arbitration policy: "The Company has adopted an arbitration policy, which provides for mandatory arbitration of all disputes arising out of any employee's employment at the Company, an employee's termination of employment or other change in employment status, which cannot be resolved by informal internal resolution. By accepting or continuing in employment with the Company, every employee agrees to the following policy[:]

"If your employment is terminated or your employment status is otherwise changed and you believe that your rights were violated or if any other dispute arises concerning your employment which you and the Company cannot resolve informally and internally, you and the Company agree to submit the dispute (including, but not limited to wage and hour claims and, claims of unlawful discrimination based on race, sex, age, national origin, disability or any other basis prohibited by law), exclusively to binding arbitration before a retired judge. This Arbitration Policy specifically excludes only those claims that are required by law to be heard solely by a public agency such as worker's compensation. . . . [¶] . . . [¶]

"You and the Company shall each bear your own costs for legal representation at any such arbitration. The Company will be responsible for all costs associated with the arbitration (with the exception of legal representation). . . .

"You and the Company agree that if any court of competent jurisdiction declares that any part of this Arbitration Policy or the Acknowledgment of Receipt of Arbitration

3

Policy and Agreement to Arbitration, which is being provided to you at the same time, is illegal, invalid or unenforceable, such a declaration will not affect the legality, validity or enforceability of the remaining parts of either document, and the illegal, invalid, or unenforceable part will no longer be part of either document."[1]

The second paragraph of page three of the handbook, under the heading "Right to Revise," states, "The Company retains the right to revise, modify, or delete any provision or policy in this Handbook, or the implementation of any provision or policy, except for the policy of at-will employment, at any time."

c. *Acknowledgment of receipt of employee handbook*

On the first day of her employment, Serpa also received and signed a document entitled "Acknowledgment of Receipt of Employee Handbook" in which she acknowledged reviewing a copy of the handbook and agreed to abide by the terms and conditions of her employment as stated in the handbook. This acknowledgment form also stated, "I understand that any and all policies or practices [in the handbook] can be changed at any time by employer. Employer reserves the right to change my hours, wages and working conditions at any time. . . . I also understand that the employer reserves the right to amend, modify, rescind, delete, supplement or add to the provisions of the Handbook, as it deems appropriate from time to time in its sole discretion."

3. *Serpa's Opposition to the Motion To Compel Arbitration*

Serpa opposed the motion to compel arbitration, asserting any agreement to arbitrate was unconscionable. She argued the agreement to arbitrate was part of an adhesion contract, lacked mutuality of obligation and, because any part of the handbook, including the arbitration policy, could be revised at any time by CSI, was illusory. In addition, Serpa argued the arbitration agreement was substantively unconscionable because it required her to submit to internal grievance procedures before pursuing arbitration, thus giving CSI a "free peek" at her case, and deprived her of her statutory

---

[1]     A similar severance provision also appears in the arbitration agreement.

right under FEHA to recover attorney fees if she prevailed on any of her FEHA claims (Gov. Code, § 12965, subd. (b)).

4. *The Trial Court's Ruling Denying the CSI Parties' Motion*

The trial court denied the CSI parties' motion to compel arbitration, agreeing with Serpa that the agreement was unconscionable. The court found the agreement to arbitrate, considered alone and on its face, lacked mutuality because it required Serpa to arbitrate her employment-related claims against CSI but did not compel CSI to arbitrate its disputes with Serpa. It also concluded that, while the arbitration policy expressed in the handbook and incorporated by reference into the agreement to arbitrate appeared to make the facially unilateral agreement to arbitrate bilateral, the bilateral nature of the agreement was actually illusory because CSI could change the arbitration policy as stated in the handbook at its sole discretion and without notice. Finding the offending nature of the agreement could not be severed without rewriting the agreement, the court concluded the agreement was unconscionable and unenforceable.[2]

## DISCUSSION

1. *Public Policy in Favor of Arbitration and Standard of Review*

There is a strong public policy in favor of arbitration. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [recognizing strong federal and state public policies favoring arbitration]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9; *Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 971-972.)

Under both the Federal Arbitration Act (FAA) and the California Arbitration Act (CAA), arbitration agreements are valid, irrevocable and enforceable except upon grounds that exist for revocation of the contract generally. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97-99 (*Armendariz*); *AT&T Mobility LLC v. Concepcion* (Apr. 27, 2011, No. 09-893) __ U.S. __ [131 S.Ct. 1740, 1746, 179 L.Ed.2d 742] [under § 2 of the FAA, arbitration agreement is valid,

---

[2]    The trial court also found the attorney fee provision deprived Serpa of potentially available remedies under FEHA, but determined that provision alone did not make the agreement unconscionable because it could be severed without altering the agreement.

5

irrevocable and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"]; Code Civ. Proc., §§ 1281 [same]; 1281.2, subd. (b) [on petition of party to arbitration agreement to arbitrate controversy with another party to agreement, court must compel arbitration unless grounds exist for revocation of agreement].) [3]

Like any other contract, an agreement to arbitrate is subject to revocation if the agreement is unconscionable. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*) (2012) 55 Cal.4th 223, 246-247 (*Pinnacle*); *Armendariz, supra,* 24 Cal.4th at p. 98; see Civ. Code, § 1670.5, subd. (a) ["[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result"].)

Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as unconscionable, is a question of law subject to de novo review. (*Pinnacle, supra,* 55 Cal.4th at p. 236; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468-1469 (*Roman*); *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1144.)

---

[3]    The CSI parties assert, and Serpa does not dispute, that their agreement is governed by the FAA (9 U.S.C. § 2) because CSI routinely engages in interstate and international commerce. (See *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 273-275, 281 [115 S.Ct. 834, 130 L.Ed.2d 753]; *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 979-980.) On the question presented in this case—whether the agreement is revocable as unconscionable—the FAA and the CAA are, for all practical purposes, identical. (See 9 U.S.C. § 2; Code Civ. Proc., § 1281.) There is no contention in this case that California law is inconsistent with the FAA. (See *AT&T Mobility LLC v. Concepcion, supra,* 131 S.Ct. at p. 1746 [validity and enforceability of an arbitration agreement is governed by state law applicable to contracts generally so long as state law does not conflict with the FAA]; *Natalini v. Import Motors* (2013) 213 Cal.App.4th 587, 594-595 [same].)

## 2. *Governing Law on Unconscionability*

Unconscionability has both procedural and substantive elements.  (*Armendariz, supra*, 24 Cal.4th at p. 99; *Roman, supra,* 172 Cal.App.4th at p. 1469.)  Although both must appear for a court to invalidate a contract or one of its individual terms (*Armendariz*, at p. 114; *Wayne v. Staples, Inc*. (2006) 135 Cal.App.4th 466, 482 (*Wayne*)), they need not be present in the same degree:  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  (*Armendariz*, at p. 114; accord, *Roman,* at p. 1470.)

Procedural unconscionability focuses on the elements of oppression and surprise.  (*Pinnacle, supra,* 55 Cal.4th at p. 247; *Roman, supra,* 172 Cal.App.4th at p. 1470; *Wayne, supra*, 135 Cal.App.4th at pp. 480-481.)  "'"'Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. . . .  Surprise involves the extent to which the terms of the bargain are hidden in a "prolix printed form" drafted by a party in a superior bargaining position.'"'"  (*Wayne*, at p. 480; see also *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 ["procedural unconscionability focuses on the oppressiveness of the stronger party's conduct"]; *Pinnacle*, at p. 247.)

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create an "'"'overly harsh'"'" or "'"'one-sided'"' result" (*Armendariz, supra*, 24 Cal.4th at p. 114; accord, *Little v. Auto Stiegler, Inc*. (2003) 29 Cal.4th 1064, 1071 (*Little*)), that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner.  (*Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1539.)  Substantive unconscionability "may take various forms," but typically is found in the employment context when the arbitration agreement is "one-sided" in favor of the employer without sufficient justification, for example, when "the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration."  (*Little*, at p. 1072; accord, *Roman, supra,* 172 Cal.App.4th at pp. 1469-1470; see also *Armendariz,* at p. 119 ["[i]t is unfairly one-

7

sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities'"]; *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1330 ["'[s]ubstantive unconscionability' focuses on the terms of the agreement and whether those terms are 'so one-sided as to "shock the conscience"'"].)

3. *The Trial Court Erred in Concluding the Agreement To Arbitrate Was Unconscionable and Unenforceable*

a. *Procedural unconscionability*

It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability. (See *Armendariz*, *supra,* 24 Cal.4th at p. 115 ["[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement"]; *Little, supra,* 29 Cal.4th at p. 1071 [same].)

The instant agreement to arbitrate is no different. It provides that, "by accepting or continuing in employment," Serpa agrees to the terms of the arbitration agreement. The parties presented neither evidence nor argument that Serpa had any opportunity to negotiate the terms of the agreement. Nonetheless, as we have explained, this adhesive aspect of an agreement is not dispositive. (*Roman, supra,* 172 Cal.App.4th at p. 1471 & fn. 2.) When, as here, there is no other indication of oppression or surprise, "the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." (*Ajamian v. CantorCO2e* (2012) 203 Cal.App.4th 771, 796; accord, *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981-982; see generally *Roman,* at p. 1471, fn. 2 ["[w]hen

8

bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal"].)[4]

### b. *Substantive unconscionability*

### i. *The obligation to arbitrate is mutual*

Serpa contends the agreement to arbitrate is one-sided because it requires her to submit claims against CSI to arbitration but does not require CSI to arbitrate its claims against her: "I understand and agree that if my employment is terminated or my employment status is otherwise changed or any other dispute arises concerning my employment . . . , I will submit any such dispute exclusively to binding arbitration."

Were that the full extent of the agreement, we would likely agree it lacked mutuality because it requires Serpa to submit to arbitration "any such disputes" involving her employment without imposing a similar obligation on CSI. (See *Armendariz*, *supra*, 24 Cal.4th at p. 117 [arbitration agreement that imposes obligation only on employee to arbitrate employee's claims lacks mutuality and is unconscionable]; *Baltazar v. Forever 21, Inc.* (2012) 212 Cal.App.4th 221, 234.) In this way, this document, at least on its face, is far different from that in *Roman, supra,* 172 Cal.App.4th 1462 in which we held the words "I agree" did not vitiate an otherwise bilateral obligation to arbitrate "all disputes and claims that might arise out of my employment." (*Id.* at pp. 1466-1467, 1471; see e.g., *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1273 [where arbitration obligation was triggered solely by employee's objection to company's personnel decision, agreement lacked mutuality]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 271 [arbitration provision unilateral and unconscionable because language providing "*Any claim that you may have arising out of*

---

[4]     In the trial court Serpa also argued the agreement had a high level of procedural unconscionability because the arbitration policy was "buried" in the employee handbook, even though it was identified in the table of contents and appeared prominently on page three of the handbook. She has abandoned that argument on appeal.

*or relating to this Agreement . . . shall be settled by binding arbitration*" imposed obligation to arbitrate only on employee, not employer].)[5]

However, as the trial court recognized, the agreement's incorporation of the arbitration policy in the employee handbook (see generally *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271 ["[a]n agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference"]; *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641 [same]) salvages the agreement by establishing an unmistakable mutual obligation on the part of CSI and Serpa to arbitrate "any dispute" arising out of her employment. (See *Roman, supra,* 172 Cal.App.4th at pp. 1467, 1471 [agreement providing "all disputes and claims arising out of" employment was bilateral because it covered both employer's and employee's claims]; *McManus v. CIBC World Markets Corporation* (2003) 109 Cal.App.4th 76, 100 [agreement to arbitrate "'[a]ll disputes arising out of your employment'" created mutual obligation to arbitrate].)

### ii. *The obligation to arbitrate is not illusory*

Serpa agrees the arbitration policy in the handbook establishes a bilateral obligation to arbitrate but insists that mutual obligation is illusory because, as both the handbook and the written acknowledgment of its receipt make clear, CSI is authorized to alter the terms of any policy contained in the handbook at its sole discretion and without notice. (See *Mattei v. Hopper* (1958) 51 Cal.2d 119, 122 [an agreement is illusory if it leaves one party "free to perform or to withdraw from the agreement at his own unrestricted pleasure"].) This argument fails to recognize the fundamental limit on CSI's ability to alter the arbitration agreement imposed by the covenant of good faith and fair dealing implied in every contract.

---

[5] The question whether the term "I agree" transforms what would otherwise appear to be a bilateral agreement to arbitrate into a unilateral one, an issue that, as we have explained, is not presented in this case, is currently pending in the Supreme Court. (See *Wisdom v. AccentCare, Inc.* (2012) 202 Cal.App.4th 591, review granted Mar. 28, 2012, S200128.)

10

The implied covenant of good faith prevents one contracting party from "unfairly frustrating the other party's right to receive the benefits of the agreement actually made." (*Guz v. Bechtel National*, *Inc.* (2000) 24 Cal.4th 317, 349; accord, *American Express Bank, FSB v. Kayatta* (2010) 190 Cal.App.4th 563, 570.) Thus, it has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract. (See *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923 ["'where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing'"]; see generally *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 16 [employer's right to unilaterally modify employment agreement does not make agreement illusory]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 787-788 [contracting party with unilateral right to modify contract does not have "carte blanche to make any kind of change whatsoever"; unilateral right to modify, when limited by the implied covenant of good faith and fair dealing, requires the party holding the power to affect the other party's rights to exercise it in a manner consistent with the reasonable contemplation of the parties at the time of the contract].)

Application of the implied covenant of good faith and fair dealing is no different in the arbitration context. In *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199 (*24 Hour Fitness*), a former employee brought an action against the company, doing business as 24 Hour Nautilus, for sexual harassment and related torts. The employer moved to compel arbitration based on an arbitration policy in its employee handbook, which also contained a provision allowing the company to amend the handbook at its sole discretion. The *24 Hour Fitness* court rejected the plaintiff's contention the unilateral right-to-amend provision made the arbitration agreement illusory and thus unconscionable. Observing the parties to an arbitration agreement, like any contract, are bound by the contract's implied covenant of good faith, the court explained, "Nautilus's discretionary power to modify the terms of the personnel

11

handbook on [written] notice indisputably carries with it the duty to exercise that right fairly and in good faith. [Citation.] So construed, the modification provision does not render the contract illusory." (*Id.* at p. 1214.)

*Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425 (*Peleg*) is not to the contrary. In *Peleg* the employee of a department store asserted the arbitration agreement he signed was illusory because the store retained the unilateral right to amend, modify or revoke the agreement on 30 days' advance written notice, with the change to apply to any unfiled claim. (*Id.* at p. 1437.) Citing 24 *Hour Fitness,* the *Peleg* court observed, had the agreement to arbitrate simply authorized the department store to make unilateral modifications, it would not be illusory under California law because the implied covenant of good faith and fair dealing would preclude any change that undermined the employee's rights. (*Peleg*, at pp. 1465-1466.) What made the agreement problematic, in the court's view, was that it expressly applied to unfiled claims, including those that had accrued, thus potentially permitting the employer to modify the agreement retroactively to frustrate the employee's rights in arbitration. Because the agreement specifically allowed retroactive modifications, the implied covenant could not be used to vary those express contract terms and limit the employee to prospective amendments only. (*Id.* at p. 1464 ["while the covenant may imply limitations making the use of that right fair and in good faith, it may not give rise to duties or obligations that conflict with the agreement's express terms"]; see *Carma Developers* (*Cal.*), *Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 ["the implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose'"].) Without the benefit of the implied covenant to rein in and restrict the employer's otherwise unilateral right to modify the agreement to include unfiled

12

claims, the court held the agreement to arbitrate was illusory and invalid under California law. (*Peleg*, at pp. 1464-1465.)[6]

The peculiar issue of retroactivity that concerned the court in *Peleg* is not present in this case. Thus, we need not consider whether we agree with that court's implicit conclusion that modifications to arbitration procedures affecting accrued claims would not be subject to the implied covenant of good faith. (See *Peleg, supra,* 204 Cal.App.4th at pp. 1433, 1465.) Simply stated, under the analyses of both *24 Hour Fitness* and *Peleg,* the implied covenant of good faith and fair dealing is properly applied in this case and saves this arbitration contract from being illusory. (See *24 Hour Fitness, supra,* 66 Cal.App.4th at p. 1214; see generally Civ. Code, § 1643 [if possible without violating the parties' unambiguous intent, a contract is interpreted so as to make it "lawful, operative, definite, reasonable and capable of being carried into effect"]; *Pearson Dental Supplies v. Superior Court* (2010) 48 Cal.4th 665, 682 [whenever possible court interprets contract in manner that is consistent with parties' intent and renders contract enforceable rather than void].)

Serpa alternatively argues, and the trial court apparently agreed, *24 Hour Fitness* is distinguishable because the arbitration provision in that case permitted the employer to modify the handbook's policies only after giving the employee written notice, while in the instant case the agreement can be modified by CSI to the employee's detriment without any notice. This characterization of the agreement in *24 Hour Fitness* is questionable. No advance notice was required; only written notice after the fact. (See *24 Hour Fitness, supra,* 66 Cal.App.4th at p. 1213 [Nautilus "reserves the right to change any provision in this Handbook at any time for any reason without advance notice" provided changes are made in a writing provided to employee].) In any event, when, as here, the agreement is silent as to notice, implied in the unilateral right to modify is the accompanying obligation to do so upon reasonable and fair notice. (See, e.g., *Asmus v.*

6        The *Peleg* court ultimately applied the Texas choice-of-law provision in the agreement and concluded the agreement was unconscionable under Texas law. (*Peleg, supra,* 204 Cal.App.4th at p. 1467.)

13

*Pacific Bell, supra,* 23 Cal.4th at p. 16; see generally *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 334.) In sum, this is an even stronger case than *24 Hour Fitness* to conclude the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable.[7]

> ### iii. *The attorney fee provision is unconscionable but may be severed without vitiating the agreement to arbitrate*

Serpa contends the agreement to arbitrate is substantively unconscionable because, by requiring the parties to bear their own attorney fees, it purports to deprive Serpa of unwaivable statutory remedies available to her if she prevails on her FEHA claims at the arbitration. (See Gov. Code, § 12965, subd. (b); *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984 [FEHA's authorization of attorney fees is intended, among other things, to make it easier for plaintiffs of limited means to pursue meritorious claims and thereby encourage litigation of claims that are in the public interest]; *Armendariz, supra,* 24 Cal.4th at p. 124 & fn. 13 [agreement to arbitrate is substantively unconscionable when it purports to deprive employee of unwaivable statutory rights and remedies under FEHA]; *Ajamian v. CantorCO2e, L.P., supra,* 203 Cal.App.4th at p. 800 [arbitration

---

[7]     In holding the unilateral right to modify the arbitration agreement is restricted by the implied covenant of good faith and fair dealing, we are mindful of, albeit not persuaded by, dictum from our Division Five colleagues' recent opinion in *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1523, stating a purported agreement to arbitrate in an employee handbook "is illusory if, as here, the employer can unilaterally modify the handbook." The *Sparks* majority held the arbitration agreement was unenforceable for a number of reasons not present here (for example, the employee did not actually sign an arbitration agreement and the arbitration provisions in the employee handbook were never called to his attention). Among a litany of other grounds for not enforcing the agreement was the single sentence we just quoted, citing only to out-of-state authority, without further legal analysis, let alone any discussion of *24 Hour Fitness* and its application of the implied covenant of good faith and fair dealing. (*Sparks*, at p. 1523; but see *id.* at p. 1524 (conc. and dis. opn. of Turner, J.).) To the extent this dictum is inconsistent with *24 Hour Fitness's* application of the implied covenant of good faith and fair dealing, we find the latter opinion more persuasive for the reasons we have explained.

agreement eliminating plaintiff's statutory right to recover attorney fees under Lab. Code if she prevailed on her overtime claim and imposing on her obligation to pay reasonable attorney fees in event employer prevailed was unconscionable; "'[t]his violates *Armendariz*'"].)

The CSI parties, on the other hand, urge the requirement that each party bear her or its own attorney fees is not substantively unconscionable; it simply applies the "American rule" that, unless expressly provided in contract or statute, each party to a litigation must pay its own attorney fees. (See *Trope v. Katz* (1995) 11 Cal.4th 274, 278; see also Code Civ. Proc., § 1021 [absent contractual or statutory authority, each party bears own attorney fees].) In those cases where attorney fees are statutorily authorized, they argue, as in FEHA actions, the attorney fee provision will be applied consistently with existing FEHA requirements. (Cf. *Armendariz, supra,* 24 Cal.4th at p. 113 [absence of specific provisions on costs in arbitration agreement is not ground for denying enforcement of arbitration agreement; rather, agreement will be interpreted consistently with FEHA's requirements]; see generally *Pearson Dental Supplies*, *Inc. v. Superior Court, supra,* 48 Cal.4th at p. 682 [ambiguity in agreement should be interpreted, whenever possible, in manner consistent with parties' intent and to make agreement valid rather than void].)

Had the agreement to arbitrate been silent on the question of attorney fees, or provided for the recovery of attorney fees in an appropriate circumstance or in accordance with applicable law, we might agree with the CSI parties. However, the attorney fee provision is not ambiguous. It expressly requires each party to bear his, her or its own attorney fees regardless of the type of action brought. It provides for this approach even while expressly stating the agreement governs actions for harassment and discrimination. For that reason, the provision limiting the recovery of attorney fees is unenforceable. (*Armendariz, supra,* 24 Cal.4th at p. 124.) That determination, however, does not vitiate the underlying agreement to arbitrate. When, as here, the arbitration agreement is not otherwise permeated by unconscionability, the offending provision, which is plainly collateral to the main purpose of the contract, is properly severed and the

15

remainder of the contract enforced. (See *Roman, supra,* 172 Cal.App.4th at p. 1462; *Armendariz,* at p. 122 [although Civ. Code, § 1670.5 gives trial court some discretion whether to sever the unconscionable provision or refuse to enforce entire agreement, it also appears "to contemplate the latter course only when an agreement is "'permeated' by unconscionability"]; *Dotson v. Amgen, Inc., supra,* 181 Cal.App.4th at pp. 985-986 [same].)[8]

> ### iv. *Language in the agreement contemplating internal efforts to resolve the dispute before it is submitted to arbitration is not substantively unconscionable*

Relying on language in *Nyulassy v. Lockheed Martin Corp., supra,* 120 Cal.App.4th 1267, Serpa contends the agreement to arbitrate "requires" her to submit her dispute informally to the company before seeking arbitration and thus unfairly gives the CSI parties a "free peek" at her case. (See *id.* at pp. 1282-1283 [given unilateral nature of agreement requiring only employee to arbitrate his claims, the additional requirement that employee submit claim to supervisors before seeking to arbitrate claims, while seemingly laudable effort at informal resolution, was actually just an effort to obtain a "free peek" at employee's case].) The agreement states that if the dispute "cannot be resolved through informal internal efforts, I will submit" the claim to binding arbitration. "Informal internal efforts" are not defined in the agreement or the handbook, and there is no reasonable basis to infer the agreement requires anything other than some informal notice of a grievance before proceeding to arbitration. This case is thus far different from the provisions in *Nyulassy,* which the court found unacceptable primarily because it was yet another employer-based mechanism in an agreement permeated by unilateral provisions favoring the employer. (*Id.* at p. 1283.) Moreover, to the extent the cited language is anything other than precatory, a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable

---

8    For all practical purposes, of course, severance of the offending provision yields the same result as if the agreement was simply interpreted in accordance with FEHA requirements, as the CSI parties urge. That is, each party will be responsible for his, her and its own attorney fees unless FEHA compels a different result.

in an agreement containing a mutual obligation to arbitrate. It plainly does not "shock the conscience" so as to vitiate the arbitration agreement.

In sum, the agreement to arbitrate is not unconscionable. To the extent the agreement contains an attorney fee provision that purports to deprive Serpa of her remedies under FEHA, that particular provision is properly severed, and the remainder of the agreement to arbitrate is properly enforced.

## DISPOSITION

The order denying the CSI parties' motion to compel arbitration is reversed. On remand the trial court is directed to sever the offending attorney fee provision from the agreement and otherwise grant the motion to compel arbitration. The CSI parties are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


WOODS, J.


JACKSON, J.


17

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| VALERIE SERPA, | B237363 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC464218) |
| v. | |
| CALIFORNIA SURETY INVESTIGATIONS, INC., et al., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN JUDGMENT) |
| Defendants and Appellants. | |

THE COURT:

The opinion in this case filed March 21, 2013 was not certified for publication. It appears the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

18

IT IS FURTHER ORDERED that the first paragraph on page 2 be deleted and replaced with:

>   Valerie Serpa sued California Surety Investigations (CSI), its employee Peter Holdsworth and CSI's parent company, Two Jinn, Inc., doing business as Aladdin Bail Bonds (collectively CSI parties), for sexual harassment, employment discrimination, wrongful termination in violation of public policy and related causes of action.  The trial court denied the CSI parties' motion to compel arbitration, finding the agreement to arbitrate lacked mutuality.  The court rejected the CSI parties' argument the requisite mutuality was provided by the bilateral arbitration provisions in CSI's employees' handbook, incorporated by reference into the arbitration agreement, because CSI could change the handbook at its sole discretion and without notice.  We reverse.

>   There is no change in the judgment.

_____

| PERLUSS, P. J. | WOODS, J. | JACKSON, J. |