Filed 6/3/15  Garrido v. Air Liquide Industrial US CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARIO GARRIDO, | B254490 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC485942) |
| v. | |
| AIR LIQUIDE INDUSTRIAL U.S. LP, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Amy D. Hogue, Judge.  Reversed.

Littler Mendelson, Nancy E. Pritikin, Dominic J. Messiha, Jennifer Tsao for Defendant and Appellant.

Esensten Law, Robert Esensten, Jordan S. Esensten for Plaintiff and Respondent.

_____

The trial court denied a motion to compel arbitration, finding that arbitration was improper under *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*). On appeal, neither party contends that *Gentry* is still controlling after its holding was found abrogated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). We find no remaining basis to deny arbitration, and therefore reverse the trial court's order.

## Factual and Procedural Background

Defendant and appellant American Air Liquide, Inc. (Air Liquide[1]) produces and distributes industrial gases throughout the United States. Plaintiff and respondent Mario Garrido was hired as a truck driver by Air Liquide in June 2009. Garrido transported Air Liquide gases to locations in California and neighboring states from Air Liquide's Sante Fe Springs production and distribution center.

Upon his hiring, Garrido entered into an "Alternative Dispute Resolution Agreement" (the ADR agreement). The ADR agreement stipulates that all disputes arising out of Garrido's employment with Air Liquide are to be resolved through alternative dispute resolution, including arbitration "if necessary." According to its terms, the agreement, and any arbitration proceedings, are governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.) (FAA).

The ADR agreement allows the parties to conduct discovery and file motions in arbitration. Prior to an employee-initiated arbitration, the employee is required to contribute a sum toward the arbitrator's fee equal to the then-current filing fee in the applicable state or federal court for a complaint or first appearance, whichever is lower. The arbitrator is authorized to provide to the prevailing party all remedies and costs available under applicable law, and is required to issue a written opinion and award

---

[1] Defendant states that it was named incorrectly in plaintiff's complaint, and that its actual name is Air Liquide Industrial U.S. LP. The proper name of defendant is irrelevant to the matters decided in this appeal, and so we refer generally to defendant as Air Liquide.

2

stating essential findings and the conclusions upon which the award is based. The ADR agreement prohibits arbitration on a class, collective, and representative basis, as well as private attorney general actions.

Garrido's employment with Air Liquide was terminated in January 2011. In June 2012, Garrido filed a class action complaint against Air Liquide, alleging that it failed to provide mandated timely meal periods (Lab. Code, §§ 226.7, 512) and accurate itemized wage statements (Lab. Code, §§ 226, 226.3), failed to pay compensation due upon separation of employment (Lab. Code, §§ 201-203), and committed unfair business practices (Bus. & Prof. Code, § 17200, et seq.).

Air Liquide promptly moved to compel arbitration of Garrido's claims. Air Liquide argued that the ADR agreement is binding and requires Garrido to arbitrate all of his claims, and that the agreement's class action waiver should be enforced. Garrido opposed the motion, arguing that the FAA does not apply to transportation workers like Garrido under 9 United States Code section 1, and that the ADR agreement is unenforceable under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) (CAA).

The trial court denied Air Liquide's motion to compel individual arbitration. It found that the FAA applied due to the express terms of the ADR agreement, which states that the agreement and any proceedings are governed by the FAA. However, the court found that, even under the FAA, the ADR agreement could not be enforced pursuant to *Gentry*, because, by denying the ability to bring a class claim, the agreement stood as an obstacle to an employee's right to vindicate statutory labor rights.

Air Liquide timely appealed.

## DISCUSSION

An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) When a trial court's order is based on a question of law, we review the denial de novo. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Decisions of fact are reviewed for substantial evidence. (*Ibid.*)

3

As noted, the trial court found that denial of Air Liquide's motion to compel arbitration was mandated by *Gentry*. Following the trial court's order, our Supreme Court issued its decision in *Iskanian,* finding that *Gentry*'s holding was abrogated by a United States Supreme Court decision, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*). (*Iskanian*, *supra*, 59 Cal.4th 348, 364.) Based on *Concepcion*, *Iskanian* held that a state's refusal to enforce a class waiver on grounds of public policy or unconscionability was preempted by the FAA. (*Iskanian*, at pp. 359-360, 364.)

Garrido does not submit any reasoned argument supporting the proposition that *Gentry*'s holding still constitutes an independent basis for denial of arbitration.[2] Accordingly, we turn to the parties' other contentions regarding the enforceability of the ADR agreement.

## I. **The FAA does not apply**

In moving to compel arbitration, Air Liquide asserted, and the trial court agreed, that the ADR agreement is governed by the FAA. The trial court's decision was based entirely on the language of the ADR agreement, which states that the agreement, and any proceedings held pursuant to it, are subject to the FAA. Garrido contends that the ADR Agreement is not governed by the FAA because the FAA does not apply to employment contracts entered into by truck drivers.

Section 1 of the FAA exempts from coverage of the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1; see also *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 109 (*Circuit City*).) This "'any other class of workers

---

[2] Garrido bluntly states that the trial court's analysis of *Gentry* remains valid. Because Garrido offers no reasoned argument or citation to legal authority supporting this contention, we consider this argument forfeited. (See *Hill v. Affirmed Housing Group* (2014) 226 Cal.App.4th 1192, 1200; *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1300 [omission of analysis and legal authority results in forfeiture of argument].)

engaged in foreign or interstate commerce'" has been defined to mean "transportation workers." (*Circuit City*, at p. 121.)

Contrary to the trial court's finding, a transportation worker's employment agreement does not become subject to the FAA simply because the agreement declares that it is subject to the FAA. By stating that it is subject to and governed by the FAA, the agreement necessarily incorporates section 1 of the FAA, which includes the exemption for transportation workers. Accordingly, courts have found transportation workers' employment agreements exempt from the FAA, even when the agreements purport to be governed by the FAA. (See, e.g., *Palcko v. Airborne Express, Inc.* (3d Cir. 2004) 372 F.3d 588; *Veliz v. Cintas Corp.* (N.D.Cal. 2004) 2004 U.S. Dist. LEXIS 32208 (*Veliz*); *Western Dairy Transport, LLC v. Vasquez* (Tex.App. 2014) 2014 Tex.App. LEXIS 8368 (*Western Dairy*).)

This still leaves the question of whether Garrido was a "transportation worker" under section 1 of the FAA. We find that he was. Garrido worked as a truck driver transporting Air Liquide gases, frequently across state lines. "The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate, such as [an] interstate truck driver whose primary function is to deliver mailing packages from one state into another." (*Veliz*, *supra*, 2004 U.S. Dist. LEXIS 32208 at p. *18.) "The FAA is inapplicable to drivers . . . who are engaged in interstate commerce." (*Harden v. Roadway Package Systems, Inc.* (9th Cir. 2001) 249 F.3d 1137, 1140; see also *Western Dairy*, *supra*, 2014 Tex.App. LEXIS at p. *6 [truck drivers are "indisputably transportation workers"].)

Citing to *Hill v. Rent-A-Center, Inc.* (11th Cir. 2005) 398 F.3d 1286, 1290 (*Hill*), which found that "Congress was concerned only with giving the arbitration exemption to 'classes' of transportation workers within the transportation industry," Air Liquide argues that it is not in the transportation industry and so the FAA section 1 exemption cannot apply. *Hill* did not delineate the contours of the "transportation industry." Indeed, it appears that the term is not rigid. "[T]he more related to the transportation industry an

5

enterprise is, the less necessary it becomes for the employee to be directly transporting goods." (*Veliz, supra*, 2004 U.S. Dist. LEXIS 32208 at p. *23.)

A significant portion of Air Liquide's business involves the transportation of its gases across states lines. Thus, it must be said that Air Liquide is at least somewhat involved in the transportation industry. And unlike the plaintiff in *Hill*—an "account manager" whose truck delivery duties were incidental to his job (398 F.3d at pp. 1287, 1289)—Garrido' s duty as a truck driver *was* the transportation of goods. Air Liquide cites to no authority holding that a truck driver whose responsibility is to move products across state lines does not fall under section 1 of the FAA. The fact that Garrido transported Air Liquide's own products (rather than those of an Air Liquide client) is of little consequence: "a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party; if he crosses state lines he is 'actually engaged in the movement of goods in interstate commerce.'" (*International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC* (7th Cir. 2012) 702 F.3d 954, 957.)

Thus, because Garrido was a transportation worker, the FAA does not apply to the ADR agreement.

## II. **The CAA does apply**

The parties disagree on whether the CAA applies in the absence of the FAA. Garrido asserts that, because the ADR agreement does not specifically reference the CAA, the agreement cannot be subject to the CAA, and since neither the CAA nor the FAA govern, arbitration of this action is improper.

Nothing in the CAA, however, requires that an arbitration agreement explicitly reference the CAA to be enforceable under California law. Code of Civil Procedure section 1281 provides that "[a] written agreement to submit to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." California has a "'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" (*Moncharsh v. Heily & Blase*

6

(1992) 3 Cal.4th 1, 9.) Any doubts of arbitrability are resolved in favor of arbitration. (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26.)

*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110 (*Rodriguez*), a case relied on by Garrido, does not support his position. The court in that appeal found that an agreement to arbitrate pursuant to the FAA was enforceable and that the plaintiff could not avoid arbitration under Code of Civil Procedure section 1281.2, subdivision (c). (*Rodriguez*, at pp. 1117, 1121-1122.) The court did not analyze whether the CAA would apply had the FAA not governed.

In contrast, *Ruiz v. Sysco Food Services* (2004) 122 Cal.App.4th 520 examined the effect of the CAA on an arbitration agreement that did not explicitly reference the CAA. The plaintiff in *Ruiz* argued that California law was not incorporated into an arbitration provision because the provision did not expressly refer to California law. (*Ruiz*, at p. 533.) The appellate court deemed the lack of reference immaterial and directed the trial court to grant the defendant's petition to compel arbitration under California law. (*Id.* at pp. 538-539.) In reaching a similar conclusion, the appellate court in *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105 (*Lagatree*) noted that the issue of whether it applied the FAA or the CAA to an arbitration agreement "appear[ed] to be academic," stating: "Assuming arguendo that the FAA does not apply, we would assess the validity of the parties' arbitration agreements under the California Arbitration Act." (*Lagatree*, at pp. 1120-1121.)

Garrido also contends that Air Liquide waived its right to move for arbitration under California law by basing its motion to compel arbitration on the FAA. We disagree. In the trial court, Air Liquide moved for an order "compelling arbitration and staying this civil action pending . . . arbitration" based on the "valid and enforceable arbitration agreement that requires Garrido to bring his claims in arbitration, and in his individual capacity." Although Air Liquide erroneously argued that arbitration should proceed under the FAA, it did not contend that arbitration was not compelled or was improper under the CAA. Moreover, after Garrido argued in his opposition that the FAA was inapplicable, Air Liquide replied that the ADR agreement was enforceable under

7

California law.  Under these circumstances, there is not cause to find that Air Liquide waived the right to move for arbitration under the CAA.

## III.  Arbitrability of Labor Code violations

Garrido next contends that his claims are not arbitrable pursuant to Labor Code section 229, which provides, in pertinent part, that actions "for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate."  This exemption from arbitration is effective, except when preempted by the FAA.  (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207.)

The problem Garrido faces is that none of his claims are for "due and unpaid wages."  *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676 (*Lane*) examined the same Labor Code violations that Garrido alleges existed here.  *Lane* found that an action under Labor Code section 226.7 was not one for due and unpaid wages, but rather for a failure to provide mandated meal and rest breaks.  (*Lane*, at p. 684, citing *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256-1257 ["'[A Labor Code] section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks.'"].)  Similarly, an action under Labor Code section 226 is not for due and unpaid wages but instead addresses a failure to provide itemized wage statements, while Labor Code sections 201 through 203 assess "'waiting time penalties'" when wages are not immediately paid upon termination. (*Lane*, at p. 684.)

Since none of Garrido's causes of action seek the recovery of due and unpaid wages, the exemption from arbitration found in Labor Code section 229 does not apply.

## IV.  Unconscionability analysis

Garrido also argues that the ADR agreement cannot be enforced because it is unconscionable.  "The party resisting arbitration bears the burden of proving unconscionability. [Citations.]  Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on "'a sliding scale.'"  [Citation.]  '[T]he more substantively oppressive the

8

contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).)

## A. Procedural unconscionability

"[P]rocedural unconscionability requires oppression or surprise. '"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*Pinnacle, supra*, 55 Cal.4th 223, 247.)

Garrido asserts that the ADR agreement was presented on a "take it or leave it" basis without any room to negotiate its terms. Adhesion contracts in the employment context contain aspects of procedural unconscionability. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 (*Serpa*).) Nevertheless, an agreement is not unenforceable simply because it is adhesive. (*Ibid.*; see also *Lagatree, supra*, 74 Cal.App.4th 1105, 1123 ["the mandatory nature of an arbitration agreement does not, by itself, render the agreement unenforceable"].)

The ADR agreement provides that discovery and motion practice are to be conducted in accordance with the Federal Rules of Civil Procedure (FRCP). Garrido contends that Air Liquide's failure to provide him with a copy of the FRCP was procedurally unconscionable. Failure to attach a copy of arbitration rules can support a finding of procedural unconscionability when such a failure would result in surprise. (*Lane, supra*, 224 Cal.App.4th 676, 690.) When the applicable rules are commonplace and easily obtainable through the Internet, however—as the FRCP are—a failure to provide a copy does not in itself constitute procedural unconscionability. (*Lane*, at p. 691-692; see also *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737 [absence of rules "is of minor significance"].)

Garrido also argues that the ADR agreement is concealed and inconspicuous. In *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146, the arbitration agreement was made up of "11 pages of densely worded, single-spaced text presented in

9

small typeface," was one of 37 sections of a larger document, and did not contain an individual heading. The court found that the agreement, written in English and presented to employees who could not read English, was procedurally unconscionable. (*Id.* at pp. 1145-1146.) In *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (*Gutierrez*), an arbitration clause was "particularly inconspicuous," printed in eight-point font on the opposite side of a lease agreement. In contrast, the ADR agreement here is set off as an individual document, it has its own signature page, it is clearly labeled "Alternative Dispute Resolution," it is not densely formatted, and it is printed in reasonably large-sized text. In addition, there is no evidence that Garrido cannot read English. Unlike the agreements at issue in the cases relied on by Garrido, the ADR agreement here is not concealed or inconspicuous.

Garrido's remaining argument, that the ADR agreement conceals its nature by not adequately disclosing the requirement of binding arbitration, is also untenable. The agreement's title, "Alternative Dispute Resolution," is accurate, as the agreement provides for an initial informal dispute resolution process, as well as binding arbitration, if necessary. The agreement discusses binding arbitration at length, and arbitration is the subject of numerous distinct, individual paragraphs within the agreement. In addition, the front page of the ADR agreement states in bold capitalized letters: "NOTE: THIS ADR AGREEMENT IS A WAIVER OF THE PARTIES' RIGHTS TO A CIVIL COURT ACTION." This is not an example of a cryptic arbitration requirement buried in a prolix printed form. A brief perusal of the ADR agreement makes obvious that the parties waive their rights to court action and agree to binding arbitration when necessary.

When, as here, any oppression or surprise rests almost entirely on the adhesive nature of the agreement, "'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" (*Serpa*, *supra*, 215 Cal.App.4th 695, 704, quoting *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796.)

10

## B. Substantive unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle*, *supra*, 55 Cal.4th 223, 246.)

In arguing that the ADR agreement is substantively unconscionable, Garrido contends that the ADR agreement—when read in conjunction with other documents he signed upon hiring—is unilateral and only applies to claims made by employees, not claims made by Air Liquide. "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 120 (*Armendariz*).) The terms of the ADR agreement itself are mutual. The agreement explicitly states: "All disputes arising out of or relating to the interpretation and application of this ADR Agreement or the employee's employment with Air Liquide or the termination of employment, including for example and without limitation, any claims for unfair competition, theft of trade secrets, wrongful termination, . . . or retaliation, shall be resolved through ADR, including binding arbitration if necessary." Conceding that the ADR agreement requires both parties to arbitrate their claims, Garrido argues that its mutuality is contradicted by a separate confidentiality agreement. Nothing in the confidentiality agreement, however, provides that Air Liquide may bring claims against employees in court instead of through arbitration. Nor does another document signed by Garrido relating to software piracy. In brief, if Air Liquide were to bring a claim against Garrido, the ADR agreement would govern.

Garrido also contends that the ADR agreement shortens the statute of limitations applicable to claims by employees, a condition that, if true, can result in a finding of substantive unconscionability. (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117.) The ADR agreement, though, does no such thing. Instead, it

11

allows an employee to present a written notice of dispute "within 180 days or the applicable statute of limitations period (whichever is greater)." This clause would never result in a shorter statute of limitations period. Garrido points out that a post-notice procedure in the ADR agreement requires the noncomplaining party to respond within 20 business days to the notice of dispute, and that the complaining party then must reply by sending a "second notice" within five business days. But, by the time this second notice is due, the alternative dispute resolution process has already begun and so a failure to reply within five days would not impact the statute of limitations. Further, the ADR agreement provides for no penalty for a tardy second notice. Thus, this arbitration procedure does not affect the statute of limitations.

Garrido further argues that the ADR agreement contains excessive fee provisions. "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th 83, 110-111.) The ADR agreement meets this standard. Air Liquide is to pay for fees and expenses of the arbitrator, except that, in an employee-initiated arbitration, the employee must "contribute a sum equal to the then-current filing fee in the applicable State or Federal Court for a complaint or first appearance, whichever is lower, toward the arbitrator's fee." This "contribution" to the arbitrator, offsetting some of the costs of arbitration, is similar to the expense an employee would pay to bring a court action, and it is worded to require an employee to pay no more than he or she would in court.[3] Garrido also takes

_____

[3]     The two cases cited by Garrido pertaining to improper fee provisions, *Gutierrez* and *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1177, are distinguishable. In *Gutierrez*, the administrative fee to initiate an arbitration was a "prohibitively high" $8,000, much greater than the amount that would be required in court. (114 Cal.App.4th at pp. 90-91.) In *Ingle*, the employee was required to pay a fee directly to her employer. The court found that a "true filing fee" could be appropriate, but requiring employees to pay a fee to the very entity against which they sought redress could deter employees from initiating complaints. (328 F.3d at p. 1177.)

issue with the ADR agreement's requirement that the initial notice of dispute be delivered by hand or sent via facsimile or overnight delivery to Air Liquide. Again, this requirement contemplates no greater cost (and may be significantly cheaper) than equivalent expenses in a court action, where a process server is usually employed to effect service.

Garrido next characterizes the ADR agreement as "litigator friendly" because it allows both parties to bring motions as allowed by the FRCP. Garrido's characterization is incorrect. It should go without saying that a plaintiff can benefit from the ability to file a motion just as a defendant can. And Garrido would certainly not avoid motion practice by bringing his action in court rather than through arbitration.

Finally, Garrido argues that we should consider the ADR agreement's class waiver provision as a factor in assessing substantive unconscionability. He contends that, under *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*), a class action waiver cannot constitute the entire basis for finding an agreement unconscionable, but the court is required to consider the effects of a class action waiver in conjunction with other factors in determining whether an arbitration agreement is unconscionable. He further asserts that *Chavarria v. Ralphs Grocery Co.* (9th Cir. 2013) 733 F.3d 916 (*Chavarria*) held an arbitration agreement to be unconscionable because, among other issues, it contained a class action waiver.

Contrary to Garrido's analysis, neither *Sonic II* nor *Chavarria* relied on a class waiver to find an arbitration agreement unconscionable. In *Sonic II*, the emphasis was on the efficiencies provided by the "Berman" statutes (Lab. Code, §§ 98-98.8), which allow a labor commissioner to resolve wage claims in a speedy and informal manner. (57 Cal.4th at pp. 1128-1129.) Our Supreme Court held: "The fact that the FAA preempts *Sonic I*'s [*Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659] rule requiring arbitration of wage disputes to be preceded by a Berman hearing does not mean that a court applying the unconscionability analysis may not consider the value of benefits provided by the Berman statutes, which go well beyond the hearing itself." (*Sonic II*, *supra*, 57 Cal.4th 1109, 1149.) In *Chavarria,* the United States Court of Appeals for the

Ninth Circuit found an arbitration policy unconscionable because of excessive administrative and filing costs imposed on employees, not because of a class action waiver. (733 F.3d at pp. 926-927.) The *Chavarria* court expressly noted that the United States Supreme Court, in *American Express Corp. v. Italian Colors Restaurant* (2013) __ U.S. __ [133 S.Ct. 2304], held that—although a class action waiver could result in higher costs for individual litigants—the waiver did not prevent plaintiffs from vindicating statutory rights because "'the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy.'" (*Chavarria*, *supra*, 733 F.3d at pp. 926-927, citing *Italian Colors*, 133 S.Ct. at pp. 2310-2311.)

It is possible that, under appropriate circumstances, the effects of a class action waiver could still be properly considered when assessing the potential unconscionability of an arbitration agreement under the CAA.[4] This is not an issue we need decide here, however. The ADR agreement lacks any traditional traits of substantive unconscionability and presents only a minor level of procedural unconscionability. A finding of unconscionability, therefore, is unwarranted.

## DISPOSITION

The order denying Air Liquide's motion to compel individual arbitration is reversed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


    ASHMANN-GERST, J.          HOFFSTADT, J.

---

[4]     Garrido's respondent's brief offers no analysis of whether or when a class waiver could be considered under the CAA when analyzing unconscionability.

14