Filed 3/25/14  Zipkin v. Kaiser Foundation Health Plan CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BARBARA ZIPKIN, | B245252 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC479175) |
| v. | |
| KAISER FOUNDATION HEALTH PLAN, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed with directions.

Davis Wright Tremaine, John P. LeCrone and Francisco Ochoa; and Paul Hastings, Paul W. Cane, Jr., and Elizabeth J. MacGregor for Defendants and Appellants.

Pine & Pine, Norman Pine and Stacy L. Tillet; and The Mathews Law Group and Charles T. Mathews for Plaintiff and Respondent.

# I.  INTRODUCTION

This is an appeal from an order denying the motion to compel arbitration of defendants:  Kaiser Foundation Health Plan, Inc.; Kaiser Foundation Hospitals; Southern California Permanente Medical Group; Rhonda Smalls; and Donald Marcus.  Defendants argue plaintiff, Barbara Zipkin, M.D., agreed to arbitrate her claims under the dispute resolution procedure.  Defendants contend the trial court erred in finding the agreement unenforceable based on unconscionability.  We conclude there is slight procedural unconscionability based on the adhesive nature of the arbitration agreement.  But we find the arbitration agreement is not highly substantively unconscionable in any sense subject to the possible severance of two contractual terms.  Accordingly, we reverse the order subject, upon plaintiff's request, to severance of the attorney's fees clause and amendment.  Upon remittitur issuance, the trial court shall enter a new order granting the motion to compel arbitration subject to severance of these challenged clauses.

# II.  BACKGROUND

## A.  Overview

Plaintiff is a licensed medical doctor specializing in obstetrics and gynecology.  She joined Southern California Permanente Medical Group (the medical group) as an employee physician in 1980.  Plaintiff was nominated and elected as a general partner in the medical group in August 1982.

## B.  Complaint

On February 16, 2012, plaintiff filed a complaint against defendants alleging claims for:  violating Business and Professions Code section 2056; violating Health and Safety Code section 1278.5; violating Labor Code section 1102.5; disability and age

2

discrimination in violation of Government Code section 12490, subdivision (g); wrongful termination in violation of a fundamental policy; eavesdropping violations of Penal Code section 632 et seq.; and intentional emotional distress infliction. The prayer for relief seeks: economic, special and punitive damages; injunctive relief; prejudgment interest; and costs and attorney's fees.

Plaintiff alleges on June 9, 2011, she called a meeting to complain about the inadequate patient care. On June 24, 2011, plaintiff was falsely accused of providing care to a nonmember. On July 6, 2011, Dr. Donald Marcus called her into his office to complain about her comments at the June 9, 2011 meeting. Dr. Marcus presented plaintiff with two options—early retirement or reduced compensation for six months followed by termination. Plaintiff refused to take early retirement. She was placed on administrative leave four days later.

On July 13, 2011, plaintiff wrote a letter addressed to the: Department of Managed Health Care; Medical Board of California; California Department of Insurance; and Franchise Tax Department. In her letter, plaintiff formally complained about: micromanagement of physician time; retaliatory measures against doctors who felt the need to spend more time with their patients; and refusal to reschedule patient appointments when doctors conducted a more serious medical procedure. She alleges "Kaiser Permanente" and the medical group's profit-maximizing practices were "antithetical" to requirements imposed on a noncharitable organization. Later, plaintiff was terminated from the medical group partnership on November 22, 2011.

C. Defendants' Motion To Compel Arbitration

On June 27, 2012, defendants moved to compel arbitration. Defendants argued plaintiff agreed to arbitration under the partnership agreement, which contained a binding dispute resolution procedure applicable to all partner physicians. Before filing the motion to compel arbitration, defendants requested that plaintiff agree to binding arbitration under the dispute resolution procedure. Defendants agreed to pay plaintiff's

3

share of the administrative fees and costs associated with arbitration. Plaintiff refused to arbitrate her claims.

The binding dispute resolution procedure was first added to the partnership agreement in 1992 and was most recently revised in May 2006. The medical group sent plaintiff the revised binding dispute procedure by mail in May 2006. On July 25, 2006, plaintiff signed an acknowledgment she had read the dispute resolution procedure. Plaintiff signed and dated below the following statement: "I have received a copy of the Dispute Resolution Procedure approved by the [medical group] Board of Directors on May 24, 2006, and have read it. I agree to abide by the Dispute Resolution Procedure and by any changes made from time to time by the [medical group] Board of Directors."

The dispute resolution procedure agreement identifies the kinds of disputes to which it applies: "[T]his [dispute resolution procedure] applies to a dispute between a Physician and any other person where [the medical group] is sought to be held vicariously or indirectly liable on account of the other person's conduct, and to any dispute between [the medical group] and any other person where a Physician is sought to be held vicariously liable on account of the other person's conduct." Additionally, the dispute resolution procedure agreement defines certain situations to which it does not apply: any nonpartner physician's worker's compensation claim; "a judicial action by either party for a temporary restraining order or a preliminary injunction to preserve the status quo pending arbitration"; any report to a law enforcement agency concerning conduct believed to be criminal; and any legally required report to a state professional board.

Process I in the written dispute resolution states: "The aggrieved party ('Complaining party') must give written notice of any claim by making a timely written demand for initiation of the [dispute resolution procedure] on the other party . . . The written demand must be sent by certified or registered mail, return receipt requested, within the time limitations period for asserting such a claim in a court of law in order to be considered timely. . . . [¶] The written demand for initiation of the [dispute resolution procedure] (the 'Complaint') shall be dated and signed by the Complaining

4

Party, and shall describe the nature of all claims asserted and a short and plain statement of facts on which the claims are based, including (i) a list of witnesses to the events underlying the dispute, (ii) the date the dispute arose, (iii) an adequate description (or copy) of the principal documents that contain any statement supporting the claims, (iv) the relief requested, and (v) the names of all persons from whom relief is requested." If either party is not satisfied with the written response in Process I, the dispute proceeds to Process II, or, if applicable, Process III.

In Process II, the complaining party may file a Process II statement. The Process II statement must explain why the Process I response was unsatisfactory. The Process II statement must be filed within 15 business days after receipt of the Process I statement. The Process II statement is sent to the area medical director who investigates the complaint. The area medical director must provide a written response within 30 business days of receipt of the Process II statement. If either party is unsatisfied with the area medical director's response, that party may proceed to the next applicable process. The parties may bypass Process II and proceed to Process III if the area or executive medical director is the decisionmaker or initiates the filing of the complaint by the medical group.

Process III provides for a nonbinding recommendation from the area appeals committee. If the parties bypass Process II or a party is not satisfied with the Process II response, the parties must comply with Process III. The Process III portion of the dispute resolution procedure states, "Any party invoking Process III must present the Complaint, any Process I response, any Process II response issued by the Area Medical Director, and a written appeal to the Chair of the applicable Area Appeals Committee . . . ." The committee considers documentary evidence and testimony presented by parties and issues a written nonbinding recommendation within 30 business days of the hearing. If a party is dissatisfied with the area appeals committee's nonbinding recommendation, it can utilize Process IV or proceed to arbitration under Process V.

Process IV provides for an appeal to the dispute and request committee. If either party does not accept the actions contained in the dispute and request committee report, it may request the board of directors consider the matter: "At any hearing of the [dispute

5

and request committee] or the Board of Directors, the Complaining Party may, but is not required to be represented by a [medical group] partner. The parties may be advised by lawyers who are not [medical group] partners, but such lawyers, if present, may speak only to their clients. . . . The Board of Directors will render its decision in writing within 15 business days after the last meeting at which the Appeal is considered, and a copy of such decision will be mailed to the parties. [¶] A majority decision of the Board is final and binding upon the parties." If the directors' board does not render a majority decision, the parties will be notified and either party may proceed to arbitration.

Process V is arbitration, which follows one or more of the processes discussed above. But the parties may agree to proceed directly to arbitration: "Notwithstanding the Processes set forth above, the parties to a dispute may agree between or among themselves at any time to proceed directly to this Process V. If such agreement is made, it shall be in writing signed by all parties, and once fully executed and delivered to all parties, shall be deemed to constitute service of the Demand for Arbitration."

The dispute resolution procedure provides for arbitration before an American Arbitration Association arbitrator, "Any arbitration hereunder shall be before a single arbitrator in accordance with the relevant dispute rules of the American Arbitration Association ('AAA') then in effect (which can be found at the [Web site] www.adr.org), except that in the event of any conflict between those rules and those set forth herein, the rules set forth herein shall control." The parties select the arbitrator by striking up to 6 names from a list or lists of 11 arbitrators until they agree on the same arbitrator. The agreement further states, "Each party shall pay its own legal fees in prosecuting or defending the claims so arbitrated, subject to the authority of the arbitrator to award fees and costs pursuant to the statute as set forth in paragraph (h), below." But the dispute resolution procedure does not contain a paragraph (h). In fact, none of the paragraphs are lettered or numbered.

The dispute resolution procedure provides for prehearing discovery consistent with the Federal Rules of Civil Procedure (28 U.S.C.)[1] for: interrogatories (rule 33); document requests (rule 34); depositions (rule 30); expert depositions; document subpoenas from third parties; and physical or mental examinations (rule 35). The agreement permits the arbitrator to approve additional discovery "upon a showing of good cause" by the party seeking such. In addition, the arbitrator resolves discovery disputes and has authority to grant pre-hearing motions. This includes motions to dismiss and for summary judgment in accordance with the federal civil procedure rules. The arbitrator also has authority to interpret and apply the dispute resolution procedure and "resolve any controversy" as to arbitrability. However, the dispute resolution procedure provides the following limitations on an arbitrator's powers: "The arbitrator has no authority to (i) add to or modify the terms of any contract between the parties, including but not limited to the Partnership Agreement and these Rules and Regulations, (ii) require [the medical group] to adopt new policies or procedures, (iii) hear or decide any matter that was not processed in accordance with this [dispute resolution procedure], absent written consent of both parties; or (iv) hear or decide any arbitration as a class action."

The arbitrator must return a written decision which is final and binding on the parties: "The arbitrator's award shall contain written findings of fact and a finding on each issue necessary to the arbitrator's conclusion, together with conclusions of law sufficient to provide a rationale for the arbitrator's decision with respect to the matters at issue. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The award is final and binding on the parties, and may be vacated or modified only on the grounds specified in the U.S. Arbitration Act or applicable law."

The dispute resolution procedure contains a confidentiality provision: "No part of the procedures shall be open to the public or the media. All evidence discovered or submitted at the hearing is confidential and may not be disclosed, except pursuant to

---

[1] Further references to a rule are to the Federal Rules of Civil Procedure (28 U.S.C.).

7

court order." The agreement also contains a severance clause, "If any provision of this [dispute resolution procedure] is adjudged to be void or otherwise unenforceable, in whole or in part, that adjudication shall not affect the validity of the remainder of the [dispute resolution procedure]."

Plaintiff filed her opposition to the motion to compel arbitration on September 27, 2012. She argued the arbitration provision was unenforceable because of procedural and substantive unconscionability. Plaintiff asserted the dispute resolution procedure was procedurally unconscionable because: she was never provided with a copy of the American Arbitration Agreement rules governing the arbitration; the arbitration provision was mandatory, offered on a "'take it or leave it'" basis; and the arbitration provision was on page 25 of the medical group's rules, which totaled 169 pages. She also contended the agreement was substantively unconscionable because: defendants sought arbitration to reduce the award amount compared to a jury award; the medical group has unilateral ability to amend the arbitration provision without plaintiff's consent; and the overbroad confidentiality clause favored defendants.

Plaintiff submitted her declaration. She stated she "was forced to sign an acknowledgment" that she had received the dispute resolution procedure on July 25, 2006. Plaintiff states: "At this time, I was not aware that I was consenting to any 'mandatory arbitration' of any dispute with [the medical group]. This acknowledgment form . . . was no different from the other numerous employee-related forms and acknowledgements that I had to sign without any explanation, discussion or revision." Plaintiff further stated she was never provided with a copy of the American Arbitration Association rules. In addition, she did not know which of the numerous American Arbitration Association rules contained on the Web site, www.adr.org, would apply to the arbitration.

Plaintiff also submitted a Journal of Empirical Legal Studies report entitled, "An Empirical Study of Employment Arbitration: Case Outcomes and Processes," dated March 2011. The study found the employee-win rate was 21 percent for arbitrations before the American Arbitration Association. This was lower than the employee-win

rates of 56 percent for federal court and 57 percent for state court cases. The arbitration median damages, $36,500, was also lower than the median damages of $150,500 in federal court and $110,000 in state court cases.

In addition, plaintiff submitted deposition testimony from Dr. Jeffrey A. Selevan. Dr. Selevan was a member of the directors' board. He was also the medical director of business management for the medical group from 2004 through 2011. Dr. Selevan testified the partnership rules and regulations required all partners to sign the dispute resolution procedure. In addition, Dr. Selevan stated he did not know which set of American Arbitration Association rules would govern arbitration with the medical group.

## D. Trial Court's Ruling

At the October 11, 2012 hearing, the trial court denied defendants' motion to compel arbitration. The order denying the motion was filed on October 31, 2012. The trial court found the dispute resolution agreement was procedurally unconscionable. The trial court ruled that because the American Arbitration Association rules were not attached to the dispute resolution agreement, they were procedurally unconscionable.

In addition, the trial court found the agreement was substantively unconscionable. The trial court expressed concern about defendants' choice of the American Arbitration Association as the arbitral forum: "As indicated in the article . . . entitled 'An Empirical Study of Employment Arbitration: Case Outcomes and Processes', [American Arbitration Association] arbitration appears to be biased in favor of the employer. According to the data in that article, the employee win rate in [American Arbitration Association] arbitration is 21%, as compared with a win rate in state court litigation of 57%. Further, the median arbitral award for a successful plaintiff is only 1/3 as much as that awarded in court ($36,500 vs. $109,858). [¶] It is doubtful that [plaintiff] understood that by the mere fact of signing the [dispute resolution procedure], she was decreasing her chance of winning— and decreasing her expected recovery should she win— by . . . almost three-fold. On the other hand, it is all-but-certain that [the medical group] understood these

9

salient facts when choosing to adopt a [dispute resolution procedure] that mandated [American Arbitration Association] arbitration."

The trial court also found the agreement was substantively unconscionable because the medical group could unilaterally amend the dispute resolution procedure at any time without plaintiff's consent. In addition, the confidentiality provision added to the substantive unconscionability of the agreement. The trial court further found the pre-dispute discovery -- which required plaintiff to provide a list of witnesses and an adequate description, or copy, of principal documents supporting her claims-- was substantively unconscionable. Finally, the trial court found the carve-out of injunctive relief from mandatory arbitration added to the substantive unconscionability of the agreement. Defendants filed their notice of appeal on November 20, 2012.

## III  DISCUSSION

### A.  Standard of Review

The trial court's arbitrability determination is reviewed de novo if there is no disputed extrinsic evidence. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle Museum*); *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511.) The unconscionability of an arbitration provision is ultimately a question of law. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567; *Suh v. Superior Court, supra,* 181 Cal.App.4th at p. 1511.) Thus, we review the contract de novo to determine unconscionability when extrinsic evidence is undisputed. (*Ibid.*; *Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579.)

## B.  Unconscionability

### 1.  Overview

Code of Civil Procedure section 1281 provides, "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Both state and federal laws favor enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*); *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25 [strong public policy in favor of arbitration].)  However, courts will not enforce arbitration provisions that are unconscionable or contrary to public policy.  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 247; *Armendariz, supra,* 24 Cal.4th at p. 114.)  The party opposing arbitration, in this case plaintiff, bears the burden of proving that an arbitration agreement is unenforceable based on unconscionability.  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 247; *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708.)

Our Supreme Court has stated:  "Unconscionability consists of both procedural and substantive elements.  The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  [Citations.]"  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 247; *Armendariz, supra,* 24 Cal.4th at p. 114.)  Both procedural and substantive unconscionability must be shown. However, they need not be present to the same degree and are evaluated on a sliding scale. (*Pinnacle Museum, supra,* 55 Cal.4th at p. 246; *Armendariz, supra,* 24 Cal.4th at p. 114.)  Our Supreme Court explained, "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle*

11

*Museum, supra,* 55 Cal.4th at p. 247; *Armendariz, supra,* 24 Cal.4th at p. 114.)  This case is subject to the Federal Arbitration Act.  It involves a large medical care organization.  (*Marmet Health Care Center, Inc. v. Brown* (2012) 565 U.S. ___, ___ [132 S.Ct. 1201, 1203-1204; *Summit Health, Ltd. v. Pinhas* (1991) 500 U.S. 322, 327.)  Nonetheless, California's unconscionability provisions are not preempted in the arbitration context in their entirety by the Federal Arbitration Act.  (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [131 S.Ct. 1740, 1747]; *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142-1146.)

## 2.  Procedural Unconscionability

As indicated, procedural unconscionability focuses on oppression or surprise.  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 246; *Armendariz, supra,* 24 Cal.4th at p. 114.)  Our Supreme Court explained:  "'"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'  [Citation]"  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 247; accord, *Armendariz, supra,* 24 Cal.4th at p. 114.)  There is no evidence of surprise.  Plaintiff acknowledged she received the dispute resolution procedure in May 2006.  On July 25, 2006, plaintiff signed the following statement:  "I have received a copy of the Dispute Resolution Procedure approved by the [medical group] Board of Directors on May 24, 2006, and have read it.  I agree to abide by the Dispute Resolution Procedure and by any changes made from time to time by the [medical group] Board of Directors."

The trial court found there was surprise because the arbitration agreement did not attach the American Arbitration Association rules, which were incorporated by reference.  But, the arbitration agreement directed plaintiff to the American Arbitration Association's Web site for the arbitration rules.  Defendants' failure to attach the American Arbitration Association rules is not procedurally unconscionable because plaintiff has access to those rules online.  (See *Roman v. Superior Court* (2009) 172

Cal.App.4th 1462, 1475 [enforcing arbitration agreement that incorporated American Arbitration Association rules].)  Thus, in this respect, the trial court's ruling is erroneous.  Also, to the extent the American Arbitration Association rules are inconsistent with the dispute resolution procedure rules, the agreement controls.  As noted, the dispute resolution procedure rules state, "The procedures to be followed are those set forth in the dispute resolution rules of the [American Arbitration Agreement], except to the extent those rules differ from those set forth in this [dispute resolution procedure], in which case this [dispute resolution procedure] controls."  Here, the dispute resolution procedure provides for:  a single neutral arbitrator chosen by the parties; prehearing motions; discovery consistent with the federal civil procedure rules; a written arbitration award; and judicial review of the arbitrator's decision.  Furthermore, the agreement requires each party to pay its own legal fees in arbitration.  But the medical group has offered to pay plaintiff's fees and costs unique to arbitration.  Upon remittitur issuance, the delineated attorney's fees clause may be severed, if requested by plaintiff.  (*Little v. Auto Stiegler* (2003) 29 Cal.4th 1064, 1074; *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 416-417.)

Plaintiff argues the dispute resolution procedure does not specify which set of the American Arbitration Association rules applies.  Plaintiff reasons there are numerous sets of rules on the association's Web site.  But the agreement states that the arbitration will be conducted "in accordance with the relevant dispute rules of the American Arbitration Association . . . then in effect . . . ."  Under the agreement, the relevant dispute rules for job-related claims would be American Arbitration Association's employment arbitration rules.  Likewise, the relevant dispute rules for commercial disputes would be the American Arbitration Association's commercial arbitration rules.

Plaintiff also asserts the dispute resolution procedure is ambiguous as to whether the arbitration would be conducted under the applicable rules as of the time of contracting or at the time of the arbitration.  The agreement provides for arbitration rules "then in effect . . . ."  The American Arbitration Association rules resolve this uncertainty by stating, "These rules and any amendment of them shall apply in the form in effect at the

13

time the administrative requirements are met for a demand for arbitration or submission agreement received by the [American Arbitration Association]." Thus, all of plaintiff's surprise arguments have no merit—they may not serve as a basis for setting aside the arbitration agreement.

While there is no element of surprise, there is slight procedural unconscionability based on oppression. Our Supreme Court has stated: "'The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."' [Citation.]" (*Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at p. 1071; accord, *Pinnacle Museum, supra,* 55 Cal.4th at p. 246.) Here, the dispute resolution procedure was an adhesion contract. The agreement was prepared by the medical group, with no opportunity for plaintiff to negotiate its terms. Dr. Selevan testified the partnership rules and regulations required all partners to sign the dispute resolution procedure. Because plaintiff had no meaningful choice in the matter, the dispute resolution procedure was procedurally unconscionable in this respect. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796.) However, there is no other indication of oppression. Here the degree of procedural unconscionability of an adhesion agreement is low. The agreement must be enforced unless the degree of substantive unconscionability is high. (*Ajamian v. CantorCO2e, L.P., supra,* 203 Cal.App.4th at p. 796; *Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at p. 704.)

### 3. Substantive Unconscionability

#### a. Applicable law and the trial court's ruling

Substantive unconscionability focuses on the actual terms of the agreement to determine whether they create an overly harsh or one-sided result. (*Armendariz, supra,*

24 Cal.4th at p. 114; *Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at p. 703.) Our Supreme Court has stated, "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience.""" (*Pinnacle Museum, supra,* 55 Cal.4th at p. 246.) Our Supreme Court later explained there are varying ways beyond the term "shock the conscience" to explain when substantive unconscionability is present. In *Sonic-Calabasas A, Inc. v. Moreno, supra,* 57 Cal.4th at page 1151, our Supreme Court held: "It is enough to observe that courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashion bad bargain.' (*Schnuerle*[ *v. Insight Communications Co. L.P.* (Ky. 2012) 376 S.W.2d 561,] 575[].)" An agreement is substantively unconscionable if the contractual provisions reallocate risks in an objectively unreasonable or unexpected way. (*Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at p. 703.)

The trial court found the dispute resolution procedure was substantively unconscionable for the following reasons. First, the trial court ruled defendants' choice of the American Arbitration Association as the arbitral forum was one-sided because of the repeat-player effect. The trial court relied on unsworn evidence in the form of a study showing employees won less in the arbitral forum than in the courts and received smaller awards. Second, in the trial court's view, the medical group's unilateral right to amend the arbitration agreement without plaintiff's consent made the agreement substantively unconscionable. Third, according to the trial court, the confidentiality provision added to the substantive unconscionability of the agreement. Fourth, in the trial court's opinion, the carve-out of injunctive relief from mandatory arbitration was substantively unconscionable. Finally, the agreement was substantively unconscionable because it required plaintiff to provide one-sided pre-dispute discovery to defendants prior to arbitration. We discuss each in turn.

15

### b. Arbitral forum

The dispute resolution procedure provides for arbitration before an American Arbitration Association arbitrator in accordance with its rules. The trial court expressed concern about the choice of the American Arbitration Association as the arbitral forum because of the repeat-player effect. The trial court ruled unsworn evidence in an empirical study submitted by plaintiff showed the employee success rate in American Arbitration Association arbitration was 21 percent compares to the win rate in state court cases of 57 percent. In addition, the median arbitral award for a successful plaintiff was only one-third as much as that awarded in the federal forum. However, the trial court acknowledged the parties' agreement to arbitrate before the American Arbitration Association did not make the contract unconscionable. Plaintiff also admits as much. However, plaintiff contends the repeat- player effect requires us to be attuned to her arguments concerning the substantively unconscionable terms in the dispute resolution procedure.

### c. The medical group's right to amend arbitration agreement

Plaintiff signed a statement acknowledging, "I agree to abide by the Dispute Resolution Procedure and by any changes made from time to time by the [medical group] Board of Directors." Under this provision, the medical group has a unilateral right to amend the arbitration agreement. Plaintiff argues the unilateral modification provision is one-sided and renders the contract illusory. But an employer's unilateral right to modify the arbitration agreement is subject to the limitations imposed by the covenant of good faith and fair dealing. (*Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at pp. 705-706; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1214.) Moreover, there is no evidence the medical group ever amended the dispute resolution procedure which plaintiff received in 2006. This is different from a scenario where an amendment has been imposed on an employee.

16

However, if plaintiff desires to sever this provision from the arbitration agreement, she is free to do so once the remittitur issues. (Civ. Code §1670.5; *Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at pp. 710-711.) Thus, there is no merit to plaintiff's argument the unilateral modification provision is so substantively unconscionable the arbitration agreement must be set aside.

### d. Confidentiality provision

The trial court found the confidentiality provision was substantively unconscionable. We disagree. The dispute resolution procedure states: "No part of the procedures shall be open to the public or the media. All evidence discovered or submitted at the hearing is confidential and may not be disclosed, except pursuant to court order." The confidentiality provision is mutual and permits a party to disclose evidence and documents from the arbitration pursuant to a court order. A confidentiality provision allowing for disclosure as required by law or the prior written consent of both parties is not substantively unconscionable. (*Sanchez v. Carmax Auto Superstores California* (2014) ___ Cal.App.4th ___, ___ [2014 Cal. App. LEXIS 205, *18]; *Chin v. Advanced Fresh Concepts Franchise Corp., supra,* 194 Cal.App.4th at p. 714; *Woodside Homes of Cal. Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 732.) Moreover, under the Federal Arbitration Act, to which this case is subject, the enforceability of a confidentiality provision is to be decided by the arbitrator, not the court. (*Kilgore v. KeyBank, N.A.* (9th Cir. 2013) 718 F.3d 1052, 1059, fn. 9.) Thus, plaintiff's argument the confidentiality provision is unconscionable and warrants voiding the arbitration agreement has no merit.

### e. Carve-out of injunctive relief

The agreement states, "This [dispute resolution procedure] does not apply to . . . a judicial action by either party for a temporary restraining order or a preliminary

17

injunction to preserve the status quo pending arbitration . . . ." The trial court found the provisional relief provision was substantively unconscionable because it exempted from arbitration the injunctive claims typically brought by employers. But this provision merely restates section 1281.8, subdivision (b) which states, "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." The California Arbitration Act defines "provisional remedy" to include "[p]reliminary injunctions and temporary restraining orders." (Code Civ. Proc. § 1281.8, subd. (a)(3).)

The provisional relief provision is not unconscionable. Code of Civil Procedure section 1281.8, subdivision (b) permits all parties to seek such relief. Further, plaintiff expressly seeks injunctive relief in her complaint. The statutory basis for several of her claims explicitly allow for injunctive relief: the second cause of action for violation of the whistleblower protections (Health & Saf. Code, § 1278.5, subds. (g), (h)); the fifth and sixth causes of action for disability and age discrimination; see *Johnson v. Civil Service Com.* (1984) 153 Cal.App.3d 585, 590-591); and the eighth cause of action for unlawful eavesdropping. (Pen. Code, §§ 632- 632.7.) The eighth cause of action seeks relief pursuant to Penal Code section 632.7, subdivision (b) which allows an aggrieved individual to secure injunctive relief in a court of law. The prayer for relief expressly seeks injunctive relief. There is nothing unconscionable about an arbitration provision which permits an employee to seek the very relief sought in the complaint. In terms of a permanent injunction, both sides must seek such relief from the arbitrator. There is nothing one-sided about the permanent injunction aspect of the dispute resolution procedure.

Plaintiff relies on cases which assert Code of Civil Procedure section 1281.8, subdivision (a)(3) is unconscionable in the employment arbitration context. (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147; *Mercuro v. Superior Court*

18

(2002) 96 Cal.App.4th 167, 176.) Those cases argue that Code of Civil Procedure section 1281.8, subdivision (a)(3) is unconscionable in the arbitral employment dispute context. They reason, without citation to any evidence, that such provisional relief provisions benefit employers rather than employees and thus are substantively unconscionable. However, in our case, the complaint seeks injunctive relief. And in terms of permanent injunctive relief, both sides must secure such an order from the arbitrator. Thus, there is no merit to the argument that it is unconscionable to permit either party to seek provisional injunctive relief when that is exactly what plaintiff has reserved the right to pursue.

### f. Internal dispute resolution processes prior to arbitration

The dispute resolution procedure sets forth four processes that are generally required before arbitration. In Process I, plaintiff must provide a written demand of her claims: "The written demand for initiation of the [dispute resolution procedure] (the 'Complaint') shall be dated and signed by the Complaining Party, and shall describe the nature of all claims asserted and a short and plain statement of facts on which the claims are based, including (i) a list of witnesses to the events underlying the dispute, (ii) the date the dispute arose, (iii) an adequate description (or copy) of the principal documents that contain any statement supporting the claims, (iv) the relief requested, and (v) the names of all persons from whom relief is requested." Process II through IV involve various internal appeals, some of which may be bypassed by the parties. In addition, the parties may bypass any of these processes and proceed directly to arbitration: "Notwithstanding the Processes set forth above, the parties to a dispute may agree between or among themselves at any time to proceed directly to [arbitration]. If such agreement is made, it shall be in writing signed by all parties, and once fully executed and delivered to all parties, shall be deemed to constitute service of the Demand for Arbitration."

19

At the outset, we address defendants' argument that the parties have expressly agreed to forego Processes I through IV. As noted, the dispute resolution procedure permits the parties to agree in writing to bypass any stage of the pre-arbitration procedure. Defendants argue that there has been a waiver of the pre-arbitration steps because both sides have agreed in writing not to arbitrate their dispute. Defendants reason that they have agreed to bypass the pre-arbitration procedure by filing a motion to compel arbitration. Defendants further reason that plaintiff has waived that right by filing her complaint. Thus, defendants conclude both sides have agreed in writing to bypass the pre-arbitral steps. We disagree. Plaintiff never agreed to arbitrate without pursuing the pre-arbitration dispute resolution process. Further, as previously discussed, the dispute resolution procedure requires that an agreement to that effect be signed by all parties. Plaintiffs' complaint does not constitute a waiver of the pre-arbitration dispute resolution process. No doubt, a sound argument can be made that no party desires to follow the pre-arbitration dispute resolution steps. Plaintiff has filed a complaint and defendants have filed a motion to compel arbitration. Nonetheless, the dispute resolution process provides a precise mechanism by which its pre-arbitration steps can be avoided. Plaintiff never entered into any such agreement.

In any event, plaintiff's argument has no merit it is so substantively unconscionable to require her to pursue Processes I through IV that the arbitration provision must be set aside. Our Supreme Court has recognized there are varying ways to characterize substantive unconscionability: a contractual term that is overly harsh; one that is unduly oppressive; an agreement that is unfairly one-sided; and as one that is so one-sided as to shock the conscience. (*Sonic-Calabasas A, Inc. v. Moreno*, *supra*, 57 Cal.4th at p. 1145.) Our Supreme Court has never decided whether any of these characterizations is an exclusive way of defining substantive unconscionability to the exclusion of another. (*Id*. at p. 1160.) But, under any of these characterizations, the requirements imposed by Process I through IV are, at best from plaintiff's perspective, not *highly* substantively unconscionable.

20

Further, we must evaluate the commercial setting in which an arbitration agreement arises in assessing an unconscionability claim. (Civ. Code, § 1670.5, subd. (b); *Sonic-Calabasas A, Inc. v. Moreno*, *supra*, 57 Cal.4th at p. 1148 [employment agreement]; *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396, 408 [franchise agreement].) Here, the commercial setting involves not merely employment questions but partnership issues. Plaintiff's claims are dependent in part upon her partnership rights as well as those of other partners. Although not dispositive, the fact that plaintiff is contesting the right of other partners to terminate her provides a materially different context from the traditional employment dispute. Further, Processes I through IV serve the important public policy of encouraging the resolution of disputes prior to litigation. (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 132; *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1166.) Accordingly, assuming that requiring pre-arbitration dispute resolution is unconscionable, it is of a low degree. The procedural and alleged substantive unconscionability are both of a low degree. Thus, the petition to compel arbitration should have been granted subject to the severance of the attorney's fees and amendment provisions. (*O'Donoghue v. Superior Court* (2013) 219 Cal.App.4th 245, 260; *Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at pp. 704-705.)

## IV. DISPOSITION

The order denying the motion to compel arbitration is reversed. Upon remittitur issuance, a new order is to be entered granting the motion to compel arbitration. The trial court retains the authority to sever the attorney's fees provision requiring each side to bear the costs unique to arbitration and the amendment clause. Defendants, Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, Southern California Permanente Medical group, Rhonda Smalls and Donald Marcus, shall recover their appeal costs from plaintiff, Barbara Zipkin.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

I concur:

KUMAR, J.[*]

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22

Zipkin v. Kaiser
B245252

MOSK, J., Dissenting


I dissent

Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, Southern California Permanente Medical Group (SCPMG) Rhonda Smalls and Donald Marcus appeal from a trial court's order denying a motion to compel arbitration of the claims of plaintiff Barbara Zipkin, M.D. I would affirm the trial court's order.


## BACKGROUND

**Facts**

Plaintiff, a licensed medical doctor, joined SCPMG as an employee in 1980, and became a partner in that group in 1982. SCPMG contracts with Kaiser Foundation Health Plan, Inc. to provide medical services to Kaiser members in Southern California. Kaiser Foundation Hospitals owns and operates medical centers and hospitals through which SCPMG provides medical services to Kaiser members.

In 2011, plaintiff complained to state agencies concerning how SCPMG's management was adversely affecting patient care. After some allegations concerning plaintiff, she was terminated from her SCPMG partnership. She filed an action alleging wrongful termination in violation of public policy, disability discrimination, intentional infliction of emotional distress, and violations of various California Code provisions.

SCPMG moved to compel arbitration based on its rules and regulations of 1992 for a Dispute Resolution Procedure and a 2006 amendment that included an arbitration provision. The trial court denied the petition, finding the clauses in question procedurally and substantively unconscionable.

**The Clauses**

The following is language from the applicable disputed clauses.

"This DRP applies to any dispute involving a Physician and SCPMG that would otherwise be cognizable in a court of law, including, without limitation, any dispute related to a Physician's relationship with SCPMG or any alleged termination of that relationship, whether based on tract, tort, state or federal statute, ordinance or regulation. . . .

"This DRP does not apply to certain claims and disputes, as follows:  (i) any claim by a non-partner Physician for worker's compensation benefits; (ii) a judicial action by either party for a temporary restraining order or a preliminary injunction to preserve the status quo pending arbitration; (iii) any report to a law enforcement agency regarding conduct believed to be a crime; and (iv) any report to a professional board of the State of California required by law.  This DRP also is not meant to prohibit the notification of an administrative agency of the federal or state government by the filing of a charge or complaint which alleges discrimination, failure to pay compensation or other violation of law.

"Process I

"The aggrieved party ("Complaining Party") must give written notice of any claim by making a timely written demand for the initiation of the DRP on the other party (the "Responding Party").  In the case of a Physician who has a claim against SCPMG, the Physician shall send a written demand to SCMPG of the initiation of the DRP to the person(s) (the "Decision Maker(s)") whose act or failure to act ("Act") forms the basis for the Physician's claim, with a copy to the General Counsel for SCPMG. . . .  An untimely claim may be rejected on that basis alone.
[¶]. . . [¶]

"The written demand for the initiation of the DRP (the "Complaint") shall be dated and signed by the Complaining Party, and shall describe the nature of all claims asserted and a short and plain statement of facts on which the claims are based, including

2

(i) a list of witnesses to the events underlying the dispute, (ii) the date the dispute arose, (iii) an adequate description (or copy) of the principal documents that contain any statement supporting the claims, (iv) the relief requested, and (v) the names of all persons from whom relief is requested. Failure to set forth this information may be grounds for rejection of further consideration of any claim not so supported and imposes on the Complaining Party a duty to provide such information before the Complaint is further considered.

. . .

"If the Complaining Party is a Physician, the Decision Maker of Responding Party SCPMG must respond in writing to the Complaint within 30 business days after receipt. If the Complaining Party is SCPMG, the Responding Party Physician must respond in writing to the Complaint to the General Counsel for SCPMG within 30 business days after receipt. If the Responding Party fails to respond within 30 business days after receiving it, the Complaint shall be deemed denied.

"If the parties are satisfied with the response in Process I, the dispute will be deemed resolved. If either party is not satisfied with the response in Process I, the dispute may proceed to the next applicable Process.

"Process II

"If either party is not satisfied with the response in Process I, and wishes to further pursue resolution of the dispute, the parties shall next comply with either Process II or III, as applicable. The parties shall bypass Process II and proceed directly to Process III if the Area Medical Director or the Executive Medical Director is the Decision Maker, or if the Area Medical Director or the Executive Medical Director initiated or voted to initiate the filing of a Complaint asserted by SCPMG. Otherwise, the parties shall comply with Process II, as follows:

"Within 15 business days after receipt of the Process I response, or within 15 business days after the Complaint's deemed denied (see paragraph 2, (d)), the party dissatisfied with the Process I response shall send to the Area Medical Director for the Area where the physician who is the Complaining Party or Responding Party practices a

3

clear, concise, written statement (the "Process II Statement") of the facts surrounding the Complaint and the reasons why the Process I response is unsatisfactory. The Process II Statement must be signed and dated.

"After obtaining the Process II Statement, the Area Medical Director may investigate the Complaint or cause the Complaint to be investigated.

"If the Area Medical Director or designee considers it advisable, a conference may be held with the parties to discuss the Complaint in an effort to reach a mutually satisfactory resolution. The Area medical Director or designee will provide a written response to the Complaint within 30 business days of receipt of the Process II Statement. The written response will state whether the Area Medical Director concludes that the Complaint is justified, recommends that the Process I response should be modified, or agrees the process I response was appropriate, and the reasons for these determinations. If the Area Medical Director fails to response within 30 business days of receipt of the Process II statement, it will be deemed that the Area Medical Director agrees that the Process I response was appropriate.

"If the parties are satisfied with the Area Medical Director's response in Process II, the dispute will be deemed resolved. If either party is not satisfied with the Area Medical Director's response in Process II, any dissatisfied party may proceed to the next applicable Process.

"Process III

"If the parties bypass Process II (see paragraph 3, (a)), or if the parties have not bypassed Process II but one or more parties are not satisfied with the Area Medical Director's Process II response, and either dissatisfied party wishes to further pursue resolution of the dispute, the parties shall comply with the Process III, as follows:

"Any party invoking Process III must present the Complaint, any Process I response, any Process II response issued by the Area Medical Director, and a written appeal to the Chair of the applicable Area Appeals Committee ("AAC"). The Complaint, any Process I response, any Process II response issued by the Area Medical Director, and the written appeal together shall be referred to as the 'Appeal'.

4

"The Appeal must be presented to the Chair of the applicable AAC within the following time periods:

"If Process II is bypassed pursuant to paragraph 3 (a), within 15 business days after the Complaint is denied or deemed denied or an unsatisfactory Process I response is sent to the dissatisfied party;

"If Process II is not bypassed, within 15 business days of receipt of the Area medical Director's Process II recommendation; or

"If Process II is not bypassed, by the Area Medical Director fails to response within 30 business days of receipt of the Process II Statement, within 15 business days after the Area Medical Director was to have responded under paragraph 3(a)(3).

"The AAC will meet as soon as practical to consider the dispute.  The AAC will consider any documentary evidence presented to it in a timely fashion and will hear any witness presented by either of the parties or any other relevant person, provided it feels such testimony is likely to contribute to its determinations.

"Within 30 business days of the above hearing, the AAC Chair will send by United States First Class Mail to the Complaining Party and the Responding Party the AAC's written, non-binding recommendation for how the dispute should be resolved. The Chairperson will send a signed statement to the Secretary of the Board of Directors which h will identify the parties, and the date that the AAC's report was sent to each.

"If the AAC fails to meet within 60 business days after receiving the Appeal, or if it fails to issue its non-binding recommendations within 30 business days after the hearing on the Appeal is completed, the Appeal will be deemed denied by the AAC.

"If the parties are satisfied with the non-binding recommendation from the AAC, the dispute will be deemed resolved.  If either party is not satisfied with the non-binding recommendation from the AAC, any dissatisfied party may proceed to the next applicable Process.

"If the parties are not satisfied with the AAC's non-binding recommendation or if none is forthcoming pursuant to paragraph 4(d), and any dissatisfied party wishes to further pursue resolution of the dispute, the parties shall either:

5

"Upon mutual assent confirmed in writing, utilize the procedures outlined within this Process IV below for final, binding resolution of their dispute; or

"If there is no mutual assent to utilize Process IV, proceed directly to Process V Arbitration.

"Process IV

"The party seeking appeal shall present a written Notice of Appeal to the Board ("Board Appeal") to the Secretary of the Board of Directors and to the other party. The Board Appeal must state in a clear, concise manner the basis for the Board Appeal, and must include all materials that constitute the Appeal for Process III. The Board Appeal must be signed and dated by the party presenting it.

"The Secretary of the Board of Directors or designee will forward a copy of the Board Appeal and all documents pertinent to the Appeal to the Chair of the Dispute and Request Committee ("DRC").

"The Board Appeal must be presented by the party seeking appeal to the Secretary of the Board of Directors within the following time periods: If the AAC issues a Process III non-binding recommendation, within 15 business days after the AAC has sent its process III recommendation or, if none is forthcoming pursuant to Process III paragraph (d), within 15 business days after the Appeal is deemed denied.

"The dispute will be heard first by the DRC as soon as practical. The DRC will follow procedures and make determinations as set out in the SCPMG Rules and Regulations (see section 2H).

"If either party to the dispute does not accept the actions contained in the final DRC report, either party may request the Board of Directors consider the matter (see section 2H). Such request must be written, signed and delivered to the Secretary of the Board of Directors within 15 business days of the final DRC report being mailed to the parties. If neither party delivers such request within this time period, the DRC recommendation will be final and binding upon the parties.

"At any hearing of the DRC or the Board of Directors, the Complaining Party may, but is not required to be represented by a SCPMG partner. The parties may be

6

advised by lawyers who are not SCPMG partners, but such lawyers, if present, may speak only to their clients.  Any Complaining Party who appears at the meeting of the Board of Directors or the DRC does so on his or her own personal time.  The Board of Directors will render its decision in writing within 15 business days after the last meeting at which the Appeal is considered, and a copy of such decision will be mailed to the parties.

"A majority decision of the Board of Directors is final and binding upon the parties.  If the Board of Directors does not render a majority decision, the Secretary of the Board of Directors will send by United States First Class Mail notice of same to the parties and either party may then elect to proceed to Process V.

"Process V – Arbitration

"If the dispute remains unresolved after Process III or if Process IV is utilized and no majority decision is rendered by the Board of Directors, and either party wishes to further pursue resolution of the dispute, the parties shall comply with Process V, as follows:

"Any party invoking Process V shall deliver a written, signed and dated notice (the "Demand for Arbitration") to the other party.  The party demanding arbitration must deliver the Demand for Arbitration to the other party within the following time period:

If Process IV has been bypassed, and if the AAC has issued a Process III non-binding recommendation, within 15 business days after receipt such Process III recommendation;

"If Process IV has been bypassed, but the AAC failed to hold a Process III hearing or failed to issue its non-binding recommendation within the time periods specified for such a paragraph 4(d), within 15 business days after the Appeal is deemed denied;

"If Process IV has been utilized, but the Board of Directors declines to hear the matter, or there is no majority decision rendered by the Board of Directors, within 15 business days after notification from the Secretary of the Board of Directors that it has either declined to hear the matter or failed to reach a majority decision.

"Notwithstanding the Processes set forth above, the parties to a dispute may agree between or among themselves at any time to proceed directly to this Process V.  If such

7

agreement is made, it shall be in writing signed by all parties, and once fully executed and delivered to all parties, shall be deemed to constitute service of the Demand for Arbitration.

"A Complaint whose resolution requires change to the Partnership Agreement or the partnership's Rules and Regulations is not subject to arbitration.

"Any arbitration hereunder shall be before a single arbitrator in according with the relevant dispute rules of the American Arbitration Association ("AAA") then in effect (which can be found at the website www.adr.org), except that in the event of any conflict between those rules and those set forth herein, the rules set forth herein shall control.

"Once the Demand for Arbitration is sent or deemed served, the Responding Party shall within ten (10) business days notify the appropriate office of the AAA that a dispute exists requiring arbitration.

[¶] . . . [¶]

"The award is final and binding on the parties, and may be vacated or modified only on the grounds specified in the U.S. Arbitration Act or applicable law."

"Not less than thirty (30) days prior to any hearing, the parties shall exchange copies of those documents that they anticipate will be used as exhibits and a list of names of persons they anticipate will be called as witnesses at the hearing. Each party shall be entitled to have the following pre-hearing discovery: (i) The right to serve on the other party one set of interrogatories in a form consistent with Rule 33 of the Federal Rules of Civil Procedure, which shall be limited to twenty-five (250 questions (Including sub-parts, which shall be counted separately); (ii) The right to serve on the other party one set of documents requests in a form consistent with Rule 34 of the Federal Rules of Civil Procedure, which shall be limited to twenty five (25) requests (including subparts, which shall be counted separately); (iii) The right to conduct up four (4) seven –hour days of depositions in total of witnesses or the parties in according with the procedures set forth in Rule 30 of that Federal Rules of Civil Procedure; (iv) in addition to the foregoing deposition(s), the right to conduct the deposition of any expert witness designated by the other party; (v) the right to subpoena the production of documents from third parties; and

8

(vi) the right to seek a physical or mental examination consistent with Rule 35 of that Federal Rules of Civil Procedure. Any discovery beyond that specified above must be approved by the arbitrator upon a showing of good cause by the party seeking such discovery. The arbitrator will finally resolve any dispute regarding discovery. In so doing, the arbitrator must weigh the delay in resolving the dispute, the weight of any evidence which might be reasonably expected to be discovered, alternative and less costly methods of securing the sought-after information not yet utilized, and the hardship of production. . . ."

In 2006, plaintiff signed an acknowledgment stating, "I have received a copy of the Dispute Resolution Procedure approved by the SCPMG Board of Directors on May 24, 2006, and have read it. I agree to abide by the Dispute Resolution Procedure and by any changes made to it from time to time by the SCPMG Board of Directors."

## DISCUSSION

### A.      Standard of Review and Applicable Law

Absent conflicting extrinsic evidence, the standard of review of a trial court's order on whether a trial court should have granted a motion to compel arbitration is de novo. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468-1469; *Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 959.) The parties agree that whether the Federal Arbitration Act (9 U.S.C. § 1 et seq.) or California law applies, arbitration agreements that are legally unconscionable cannot be enforced. (Civil Code § 1670.5; see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1141-1146.)

Unconscionability has both procedural and substantive elements (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246). The procedural element concerns the aspects of contract formation, such as being adhesive. Substantive unconscionability pertains to the fairness or one-sidedness of the actual terms. (*Ibid.*) "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the

9

term is unenforceable, and vice versa.'" (*Id.* at p. 247; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 89, 114 (*Armendariz*).)

### B.    Procedural Unconscionability

The Dispute Resolution Procedure was applicable to plaintiff whether or not she signed the acknowledgement.  She never agreed to this procedure.  Years after her employment, suddenly she was required to sign the acknowledgement.  This is a classic contract of adhesion.  It is true that compulsory arbitration contracts are not per se invalid.  (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1122-1123.)

The provisions refer to the relevant dispute rules of the American Arbitration Association (AAA) then in effect (which can be found at the website www.adr.org).  But it is unclear which of the many AAA rules apply.  Would they be the Commercial Rules or the Employment Rules?  What rules govern the tort claims?  And how will she know what rules will be in effect?  The failure to provide the applicable rules supports a finding of procedural unconscionability, as held by "numerous cases."  (See *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393; see also *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1523 (*Sparks*).)

### C.    Substantive Unconscionability

SCPMG may make changes to the Dispute Resolution Procedure "from time to time."  This means the SCPMG is not bound.  Such an agreement is illusory.  (See *Sparks, supra,* 207 Cal.App.4th at p. 1523.)  *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213-1214, *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 708, fn. 7, and *Casas v. Carmax Auto Superstores California LLC* (Feb. 26, 2014, B246392) __ Cal.App.4th __ [2014 Cal.App. Lexis 259] suggest such a provision does not make the agreement illusory because it includes the implied covenant of good faith and fair dealing.  But even if there is good faith, SCPMG, has a right to modify the program to something to which plaintiff has not agreed.

10

Under the Dispute Resolution Program, plaintiff before she has the right to be advised by counsel, must divulge its entire case to different levels of management. And the process forbids the employee's lawyer from speaking on the complaining party's behalf. This one-sided procedure is substantively unconscionable. (See *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1282-1283.)

The failure to follow the specific procedures and timelines can end plaintiff's process before ever getting to a neutral decision maker. Moreover, Process IV, which is an appeal to the SCPMG Board of Directors, is referred to as "final and binding upon the parties." This being so, plaintiff cannot even proceed to arbitration unless *both* parties agree to do so in writing.

The confidentiality provision inhibits a plaintiff from contacting other employees. This, coupled with restrictions in discovery, disadvantage plaintiff. (See *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1078, abrogated on another ground as recognized by *Kilgore v. KeyBank, N.A.* (9th Cir. 2012) 673 F.3d 947, 959.) As said in *Pokorny v. Quixtar, Inc.* (9th Cir. 2010) 601 F.3d 987, 1002, "while handicapping the Plaintiff's ability to investigate their claims and engage in meaningful discovery, the confidentiality provision does nothing to prevent [defendant] from using its continuous involvement in [its] ADR process to accumulate 'a wealth of knowledge' on how to arbitrate future claims brought by [plaintiffs]."

These provisions render the agreement more than just a "low degree" of unconscionability. This is plainly and simply an unfair procedure with unfair terms. Arbitration itself, which is being forced on consumers and employees, is unfair enough— it deprives people of their right to litigation in a court of law and a jury trial, and makes the judicial system irrelevant to vast numbers of people. But this agreement takes unfairness to a whole new level.

The trial court did not abuse its discretion in not providing for major surgery to sever so many unconscionable provisions in order to salvage the dispute resolution process and the arbitration provision. (See *Armendariz, supra,* 24 Cal.4th at pp. 122-127.)

11

**Conclusion**

I would affirm the order of the trial court.

MOSK, J.